416 F.2d 711
 2 Fair Empl.Prac.Cas. 121, 2 Empl. Prac. Dec.
P 10,090
Thelma BOWE et al., Plaintiffs, Appellees,
v.
COLGATE-PALMOLIVE COMPANY et al., Defendants-Appellants.
Thelma BOWE et al., Plaintiffs-Appellants,
v.
COLGATE-PALMOLIVE COMPANY et al., Defendants-Appellees.
Thelma BOWE et al., Plaintiffs-Appellees,
v.
COLGATE-PALMOLIVE COMPANY et al., Defendant-Appellee, and
International Chemical Workers Union, Local No.
15, Defendant-Appellant.
Georgianna SELLERS et al., Plaintiffs-Appellants,
v.
COLGATE PALMOLIVE COMPANY et al., Defendants-Appellees.
 Nos. 16624-16626, 16632.
 United States Court of Appeals Seventh Circuit.
 Sept. 26, 1969, As Amended on Denial of Rehearing Oct. 29, 1969.
 
 Marion W. Garnett, Chicago, Ill., John O. Moss, Indianapolis, Ind., Jerry D. Anker, Sylvia S. Ellison, Washington, D.C., for Thelma Bowe, and others, plaintiffs-appellants; Rogers, Garnett, Harth, Vital & Stroger, Chicago, Ill., of counsel.
 Herbert L. Segal, Louisville, Ky., Richard C. O'Connor, New Albany, Ind., Thomas C. Galligan, New York City, Hubert T. Willis, W. Bruce Baird, Louisville, Ky., for defendant-appellee, Colgate-Palmolive Co.
 Stephen I. Schlossberg, Bernard F. Ashe, Stanley Lubin, Detroit, Mich., for amicus curiae, International Union, UAW. Washington, D.C., for National Federation of Business and Professional Women's Clubs, Inc., amicus curiae; Collier, Shannon & Rill, Washington, D.C., of counsel.
 Daniel Steiner, Gen. Counsel, Russell Specter, David Zugschwerdt, Attys., E.E.O.C., Washington, D.C., amicus curiae.
 Before CUMMINGS and KERNER, Circuit Judges, and WISE, District Judge.*
 KERNER, Circuit Judge.
 
 
 1
 Plaintiffs are present and/or former female employees of defendant Colgate-Palmolive Company (Colgate) who were represented, for collective bargaining purposes, by defendant International Chemical Workers Union, Local No. 15 (Union) at Colgate's Jeffersonville, Indiana, plant. Plaintiffs sued Colgate and the Union under Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e et seq. charging that they were intentionally discriminated against by a system of job classification which deprived them of various opportunities in the plant and that they were subjected to discriminatory layoffs under a segregated plant seniority system based on the employees' sex.
 
 
 2
 Prior to trial, the court below required plaintiffs to elect whether they would proceed in this action or whether they would seek remedy under the collective bargaining agreement through arbitration. The court also refused to consider the claims of certain plaintiffs who had not filed charged with the Equal Employment Opportunity Commission (EEOC) and had not received notice of the right to sue from the EEOC, having determined that this action could not be maintained as a class action for purposes of applying a back pay remedy for the layoffs. After trial by the court without a jury, a memorandum opinion was filed which found for the Union if full, and for Colgate on all issues on the merits except as to certain layoffs under the segregated seniority lists in November, 1965. The crux of the lower court's opinion on the merits is its holding that Colgate acted reasonably in imposing a 35-pound weight-lifting limit on jobs which were open to females, thus foreclosing them from competing for jobs requiring lifting of more than 35 pounds. The facts are carefully set out in Bowe v. Colgate-Palmolive Co., 272 F.Supp. 332, esp. 340-360 (S.D.Ind.1967). Except for portions of the partial relief granted below, we reverse.
 
 1. ELECTION OF REMEDIES
 
 3
 The first major issue for our consideration is whether the trial court acted properly in requiring plaintiffs to elect whether they would pursue their statutory remedy in this action or seek arbitration of grievances under the collective bargaining contract. Thus, the court required an election of remedies prior to any decision on the merits in either of the available fora.
 
 
 4
 The situation facing the trial court was one in which there exists concurrent jurisdiction under the statutory scheme and under the grievance and arbitration process for the resolution of claims against an employer and a union. The analogy to labor disputes involving concurrent jurisdiction of the N.L.R.B. and the arbitration process is not merely compelling, we hold it conclusive.[1]
 
 
 5
 While we recognize that there is a burden placed on the defendant who must defend in two different fora, we also note that there may be crucial differences between the two processes and the remedy afforded by each. Also, as with unfair labor practice cases, in a case involving an alleged breach of a contract brought before an arbitrator, the arbitrator may consider himself bound to apply the contract and not give the types of remedy which are available under the statute. Conversely, an action in court may not be able to delve into all the ramifications of the contract nor afford some types of relief available through arbitration, e.g., back pay prior to the date of the statute. United Steelworkers of America, A.F.L.-C.I.O. v. American Int'l Aluminum Corp., 334 F.2d 147 (5th Cir.1964), and cases cited supra, note 1.
 
 
 6
 Moreover, in an action brought under Title VII, the charging party and suing plaintiff acts as a private attorney general who 'takes on the mantel of the sovereign.' Jenkins v. United Gas Corp., 400 F.2d 28, 32 (5th Cir. 1968). See also Oatis v. Crown Zellerbach Corp., 398 F.2d 496 (5th Cir. 1968).[2] When, as frequently happens, the alleged discrimination has been practiced on the plaintiff because he or she is a member of a class which is allegedly discriminated against, the trial court bears a special responsibility in the public interest to resolve the dispute by determining the facts regardless of the position of the individual plaintiff. Jenkins, supra at 33, n. 10 of 400 F.2d. This is only fair to the defendant as it avoids forcing him to defend a multiplicity of actions.
 
 
 7
 Accordingly, we hold that it was error not to permit the plaintiffs to utilize dual or parallel prosecution both in court and through arbitration so long as election of remedy was made after adjudication so as to preclude duplicate relief which would result in an unjust enrichment or windfall to the plaintiff. American Int'l Aluminum, supra at 152 of 334 F.2d. Cf. N.L.R.B. v. Geo. E. Light Boat Storage, Inc., 373 F.2d 762, 767-768 (5th Cir. 1967).
 
 2. WEIGHT-LIFTING RESTRICTION
 
 8
 Colgate uses an unusual system of plant-wide seniority due to the uncertainty from week to week as to which jobs in the plant will operate. Each week, every employee completes a job preference sheet for the following week with job assignments being made on the basis of seniority. The seniority system is bifurcated into separate eligibility lists for men and women. While men may bid for jobs plant wide, women are restricted to jobs which do not require lifting more than 35 pounds. The history and mechanics of this unusual system are fully set out at 272 F.Supp. 340-347. The Union also bears responsibility for this system since it continued to abide by it as enshrined in the contract in force on the effective date of Title VII and since it preserved some parts of the system in its 1966 contract with Colgate. However, as shown below, there is no liability on the part of the Union due to the failure of any of the plaintiffs to comply with the jurisdictional requisites for filing a suit against the Union.
 
 
 9
 The trial court carefully analyzed the various facts relating to the weight-lifting restriction and concluded that Colgate had acted reasonably and in the interest of the safety of its female employees in imposing the 35-pound restriction. 272 F.Supp. at 353-357, and 363-366. While this was a carefully reasoned and conscientious approach, we hold it error as it is based on a misconception of the requirements of Title VII's anti-discrimination provisions.
 
 
 10
 The trial court relied on 42 U.S.C. 2000e-2(e) which permits discrimination in hiring by sex where sex 'is a bona fide occupational qualification reasonably necessary to the normal operation of that particular business or enterprise' and 2000e-3(b) which similarly permits discrimination in job advertisements where sex 'is a bona fide occupational qualification for employment.' The court also relied on 2000e-7 which states that the Act shall not be deemed to relieve those covered under it from any liability imposed by state law, except where such law would require the doing of 'any act which would be an unlawful employment practice under this subchapter.' Thus, the court succumbed to the erroneous argument that state laws setting weight-lifting restrictions on women were not affected by Title VII. While we agree with the court's noting of the EEOC's statement that it cannot be assumed that Congress intended to strike down all such state legislation,[3] we also observe that that statement was presented to the court out of its proper context. The EEOC guideline on sex as a 'bona fide occupation qualification' (BFOQ) reads, in pertinent part, 29 C.F.R. 1604.1 and 1604.2 (1968):
 
 
 11
 1604.1 Sex as a bona fide occupational qualification.
 
 
 12
 (a) The Commission believes that the bona fide occupational qualification exception as to sex should be interpreted narrowly. Labels-- 'Men's jobs' and 'Women's jobs'-- tend to deny employment opportunities unnecessarily to one sex or the other.
 
 
 13
 (3) Most States have enacted laws or administrative regulations with respect to the employment of women. These laws fall into two general categories:
 
 
 14
 (i) Laws that require that certain benefits be provided for female employees, such as minimum wages, premium pay for overtime, rest periods or physical facilities;
 
 
 15
 (ii) Laws that prohibit the employment of women in certain hazardous occupations, in jobs requiring the lifting of heavy weights, during certain hours of the night, or for more than a specified number of hours per day or per week.
 
 
 16
 (b) The Commission believes that some state laws and regulations with respect to the employment of women, although originally for valid protective reasons, have ceased to be relevant to our technology or to the expanding role of the woman worker in our economy. We shall continue to study the problems posed by these laws and regulations in particular factual contexts, and to cooperate with other appropriate agencies in achieving a regulatory system more responsive to the demands of equal opportunity in employment.
 
 
 17
 (c) The Commission does not believe that Congress intended to disturb such laws and regulations which are intended to, and have the effect of, protecting women against exploitation and hazard. Accordingly, the Commission will consider limitations or prohibitions imposed by such state laws or regulations as a basis for application of the bona fide occupational qualification exception. However, in cases where the clear effect of a law in current circumstances is not to protect women but to subject them to discrimination, the law will not be considered a justification for discrimination. So, for example, restrictions on lifting weights will not be deemed in conflict with Title VII except where the limit is set at an unreasonably low level which could not endanger women.
 
 
 18
 (1) An employer, accordingly, will not be considered to be engaged in an unlawful employment practice when he refuses to employ a woman in a job in which women are legally prohibited from being employed or which involve duties which women may not legally be permitted to perform because of hazards reasonably to be apprehended from such employment.
 
 
 19
 1604.2 Separate lines of progression and seniority systems.
 
 
 20
 (a) It is an unlawful employment practice to classify a job as 'male' or 'female' or to maintain separate lines of progression or separate seniority lists based on sex where this would adversely affect any employee unless sex is a bona fide occupational qualification for that job. Accordingly, employment practices are unlawful which arbitrarily classify jobs so that:
 
 
 21
 (1) A female is prohibited from applying for a job labeled 'male,' or for a job in a 'male' line of progression; and vice versa.
 
 
 22
 (2) A male scheduled for layoff is prohibited from displacing a less senior female on a 'female' seniority list; and vice versa.
 
 
 23
 (b) A seniority system or line of progression which distinguishes between 'light' and 'heavy' jobs constitutes an unlawful employment practice if it operates as a disguised form of classification by sex, or creates unreasonable obstacles to the advancement by members of either sex into jobs which members of that sex would reasonably be expected to perform.
 
 
 24
 By way of further interpretation of its guidelines especially 1604.1(a)(3)(c) relating to weight-lifting limits, the EEOC has, in three separate cases, indicated that this guideline is not to be read as an approval of general weight-limits by sex in any state or even in a particular industry, but that consideration must be given on a highly individualized basis. It views such broad limitation as violative of its prohibition against the use of broad class stereotypes including those in which sex is the stereotyping factor.[4] In Case Nos. CH 7-3-183, et al., August 31, 1967, the EEOC voided a 35-pound weight limit imposed by one employer on all women employees holding that 'individuals (must) be considered on the basis of individual capacities and not on the basis of any characteristics generally attributed to the group.' In Case Nos. AU 68-10-209E, et al., July 24, 1968, the EEOC held that an agreement between an employer and union limiting females to jobs involving lifting weights of less than 55 pounds was based on a generic classification which was arbitrary and discriminatory and based on a 'stereotyped characterization of the sexes,' rather than consideration of individual capacities as to physical strength and particular job requirements. Finally, in Case Nos. CL-68-11-326E, et al., Sept. 26, 1968, fn. 1 (a case involving another major Indiana employer), the EEOC expressly stated its disagreement with the particular decision below.[5]
 
 
 25
 If anything is certain in this controversial area, it is that there is no general agreement as to what is a maximum permissible weight which can be safely lifted by women in the course of their employment. The states which have limits vary considerably. Most of the state limits were enacted many years ago and most, if not all, would be considered clearly unreasonable in light of the average physical development, strength and stamina of most modern American women who participate in the industrial work force. Almost all state limits are below the 33 to 44.1 pounds recommended by an investigatory committee of the International Labor Organization (I.L.O.) in March, 1964. Even those limits were rejected by the I.L.O. and the provision finally adopted in I.L.O. Convention No. 127 (June 28, 1967) simply states that no worker should transport loads 'which, by reason of its weight is likely to jeopardize his health or safety' and that the maximum weight of loads for women 'shall be substantially less than that permitted for adult male workers.' At the same time, Recommendation 127 was adopted stating that the maximum load for an adult male should be 55 kg. or 121 pounds. While there was no agreement as to a maximum load for women, the I.L.O. experts individually suggested limits ranging from 60.5 to 76.9 pounds, virtually twice the limit agreed to by the court below.
 
 
 26
 We agree with the Secretary of Labor insofar as he stated that it is best to consider individual qualifications and conditions, such as the physical capability and physiological makeup of an individual, climatic conditions, and the manner in which the weight is to be lifted.[6] See also, Cheatwood v. South Central Bell Telephone & Telegraph Co., 304 F.Supp. 107 (M.D.Ala., 1969). There is a significant difference in job requirements which must be considered just as carefully as the physiological capabilities of individual employees. Thus, there are probably very few plant workers (male or female) who could not lift a 38-pound case which a handle and move it 10 feet once during a shift. If, however, the case had to be moved further, or more frequently, or lifted to a shoulder-height shelf, the degree of exertion is increased and the number of those capable of performing it is diminished.
 
 
 27
 Accordingly, we hold that Colgate may, if it so desires, retain its 35-pound weight-lifting limit as a general guideline for all of its employees, male and female. However, it must notify all of its workers that each of them who desires to do so will be afforded a reasonable opportunity to demonstrate his or her ability to perform more strenuous jobs on a regular basis. Each employee who is able to so demonstrate must be permitted to bid on and fill any position to which his or her seniority may entitle him or her. On remand, the court shall study the problem together with the parties and devise and adopt a system which will afford this opportunity to each employee desiring it.[7]
 
 3. PROCEDURAL ISSUES
 
 28
 Colgate has raised some procedural issues which it urges would preclude recovery by at least some of the plaintiffs. The first issue related to the time sequence involved in filing suit and various formalities regarding the EEOC charge. Subsequently, this Court decided this issue in another Title VII case, Choate v. Caterpillar Tractor Co., 402 F.2d 357 (7th Cir. 1968). We accept Colgate's concession that Choate disposes of this issue adversely to Colgate and lays it to rest in this case.
 
 
 29
 Colgate also argued that there was a failure of necessary joinder in the actions below as none of its male employees were made parties to the action. The issue is frivolous. The Union was made a party and its duty was to represent the male employees as well as the female employees.[8] There is nothing in the law which precluded the Union from recognizing the injustice done to a substantial minority of its members and from moving to correct it. This is an internal union matter which had to be resolved within the Union and did not require intervention by the employer. See Humphrey v. Moore, 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964).[9]
 
 
 30
 Colgate also argued that the trial court was correct in deciding not to issue a preliminary injunction against it to compel discontinuance of the discriminatory practices. We believe that this was error, in part. Had the court correctly perceived the meaning of BFOQ, it would have issued an injunction. However, it could not issue one against the discriminatory layoffs as the determination of this issue was dependent on the type of careful proofs adduced at trial and therefore not appropriate for preliminary injunctive relief under the peculiar facts of this case.
 
 
 31
 It is a jurisdictional prerequisite to the filing of a suit under Title VII that a charge be filed with the EEOC against the party sought to be sued. 42 U.S.C. 2000e-5(e). This provision serves two important purposes. First, it notifies the charged party of the asserted violation. Secondly, it brings the charged party before the EEOC and permits effectuation of the Act's primary goal, the securing of voluntary compliance with the law. While we believe that the Union was not entirely blameless in permitting discrimination to exist and could have worked harded to eliminate the residual and continuing effects of the blatant prior discrimination, it is undisputed that at no time was the Union ever charged before the EEOC as a party in violation of Title VII. Accordingly, the Union cannot be held liable for any of the damages resulting from the discrimination and the trial court's determination in favor of the Union is affirmed.
 
 4. CLASS ACTION AND REMEDY
 
 32
 Having determined that the court below erred in holding the weight-limit to be a BFOQ, the decision that the November layoffs were discriminatory is now more strongly supported. For the reasons stated below, and in this opinion as to the BFOQ, that part of the trial court's decision is affirmed.
 
 
 33
 However, the court committed error in determining that only those plaintiffs who filed a charge with the EEOC were permitted to recover back pay. It should have permitted recovery by the intervening plaintiffs and required the posting of a notice allowing any other similarly situated employee to apply to the court for appropriate relief.
 
 
 34
 A suit for violation of Title VII is necessarily a class action as the evil sought to be ended is discrimination on the basis of a class characteristic, i.e., race, sex, religion or national origin. In our view, it is indistinguishable on this point from actions under Title II relating to discrimination in public accommodations. In Newman v. Piggie Park Enterprises, Inc., 390 U.S. 400, 401-402, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968), the court held that since vindication of the public interest is dependent upon private suits, the suits are private in form only and a plaintiff who obtains an injunction does so 'as a 'private attorney general', vindicating a policy that Congress considered of the highest priority.' Oatis v. Crown Zellerbach Corp., 398 F.2d 496, 499 (5th Cir. 1968), and Jenkins v. United Gas Corporation, 400 F.2d 28, 35 (5th Cir. 1968), hold similarly as to Title VII actions regarding racial discrimination. We agree with the Fifth Circuit and perceive no reason under the law or the cases why the same should not be true of Title VII actions against sex discrimination. See also Quarles v. Philip Morris, Inc., 271 F.Supp. 842 (D.Va.1967).
 
 
 35
 We are also unable to perceive any justification for treating such a suit as a class action for injunctive purposes, but not treat it so for purposes of other relief. The clear purpose of Title VII is to bring an end to the proscribed discriminatory practices and to make whole, in a pecuniary fashion, those who have suffered by it. To permit only injunctive relief in the class action would frustrate the implementation of the strong Congressional purpose expressed in the Civil Rights Act of 1964. To require that each employee file a charge with the EEOC and then join in the suit would have a deleterious effect on the purpose of the Act and impose an unnecessary hurdle to recovery for the wrong inflicted. We agree with the holding in Oatis, supra at 498, that:
 
 
 36
 '* * * It would be wasteful, if not vain, for numerous employees, all with the same grievance, to have to process many identical complaints with the EEOC. * * * The better approach would appear to be that once an aggrieved person raises a particular issue with the EEOC which he has standing to raise, he may bring an action for himself and the class of persons similarly situated * * *.'
 
 
 37
 To the extent that any dicta in Hall v. Werthan Bag Corp., 251 F.Supp. 184 (M.D.Tenn. 1966), holds contra, we reject it.
 
 
 38
 Colgate argues that the language of 42 U.S.C. 2000e-5(e) requires that each person seeking recovery must first file a charge with the EEOC and then formally join in or institute suit for recovery. This is not required in order to serve the policy behind that section. The purpose of the section (as observed above in discussing the Union) is to provide for notice to the charged party and to bring to bear the voluntary compliance and conciliation functions of the EEOC. Also, as noted by this court in Choate v. Caterpillar Tractor Corp., 402 F.2d 357, 360 (7th Cir. 1968), and in Cox v. United States Gypsum Co., 409 F.2d 289, 291 (7th Cir. 1969), another important function of filing the charge is to permit the EEOC to determine whether the charge is adequate. Finally, the charge determines the scope of the alleged violation and thereby serves to narrow the issues for prompt adjudication and decision.[10] Cf. Edwards v. North Amer. Rockwell Corp.,291 F.Supp. 199 (C.D.Calif. 1968).
 
 
 39
 It is apparent that each of these purposes is served when any charge is filed and a proper suit follows which fairly asserts grievances common to the class to be afforded relief in the court. There can be no claim of surprise in such a situation. Also, as held in Miller v. Int'l Paper Co.,408 F.2d 283, 285 (5th Cir. 1969): '* * * no procedural purpose could be served by requiring scores of substantially identical grievances to be processed through EEOC when a single charge would be sufficient to effectuate both the letter and spirit of Title VII.' Wherefore we reverse the decision below on this point and hold that this suit may properly be treated as a class action under Title VII as to all forms of relief to which any and all members of the class may be entitled by virtue of Colgate's discriminating practices.
 
 
 40
 42 U.S.C. 2000e-5(g) requires that if the court finds an intentional unlawful employment practice, it may enjoin the practice 'and order such affirmative action as may be appropriate.' This grant of authority should be broadly read and applied so as to effectively terminate the practice and make its victims whole. This was not done here. As held in Jenkins, supra at 33-35 of 400 F.2d, the District Court when applying Title VII should, after a finding of an unlawful employment practice which is plant-wide in nature, actively make the court available to all those members of the injured class who may be entitled to relief. Cf. Fibreboard Paper Prods. Corp., 138 N.L.R.B. 500, 554-56 (1962), enforced, 379 U.S. 203, 85 S.Ct. 398, 13 L.Ed.2d 233 (1964). The full remedial powers of the court must be brought to bear and all appropriate relief given.
 
 
 41
 In the instant case, this requires that all those who were discriminatorially laid off be compensated at the highest rate of pay for such jobs as they would have bid on/and qualified for if a non-discriminatory seniority scheme would have been in existence. This relief should be made available to all who were so damaged whether or not they filed charges and whether or not they joined in the suit.[11] The court shall, on remand, also enter such appropriate injunctive orders as may be required to completely eliminate the discriminatory system and any residual effect.[12]
 
 
 42
 We have considered the few remaining lesser points and find no determinative issues among them. On the issue of proof of damage, we affirm the lower court's determination that sufficient proof was adduced to support the relief. The deduction of unemployment compensation was proper, being a valid exercise of the trial judge's discretion pursuant to 42 U.S.C. 2000e-5(g).
 
 
 43
 The case is remanded to the District Court for the Southern District of Indiana for further proceedings in conformity with this opinion.
 
 
 44
 Affirmed in part, reversed in part, modified and remanded.
 
 
 
 *
 Judge Wise is sitting by designation from the United States District Court for the Eastern District of Illinois
 
 
 [1]
 It should also be noted that other remedies may have been available to the plaintiffs here before the N.L.R.B. and in the courts under sections 10 and 301(a) of the Labor-Management Relations Act. Cf. Local 357, Intern. Broth. of Teamsters, Chauffeurs, Warehousemen and Helpers of America v. N.L.R.B., 365 U.S. 667, 81 S.Ct. 835, 6 L.Ed.2d 11 (1961); Smith v. Evening News Ass'n, 371 U.S. 195, 197-198, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962); Carey v. Westinghouse Elec. Corp., 375 U.S. 261, 268, 84 S.Ct. 401, 11 L.Ed.2d 320 (1964); and Humphrey v. Moore, 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964)
 
 
 [2]
 An analogous situation existed in Newman v. Piggie Park Enterprises, 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968)
 
 
 [3]
 See 30 Fed.Reg. 14926 (1965)
 
 
 [4]
 29 C.F.R. 1604.1(a)(1)(ii) (1968)
 
 
 [5]
 It is also important to note that Indiana has no legislation of the type here discussed. The 35-pound weight-limit was arrived at by Colgate and sustained by the court below on the basis of a general analysis of legislation in other states. To the extent that the court relied on California's law, here assumed relevant due to the location of other Colgate plants in that state, we note with approval the decision in Rosenfeld v. Southern Pac. Co., 293 F.Supp. 1219 (C.D.Calif.1968), holding California's 'hours and weights legislation' invalid as setting unreasonably low standards for women in violation of Title VII. We also note that the trial court may have relied on an apparently non-existent limitation in New Jersey. See Brief of the EEOC at 43, n. 28 and Appendix A
 6 U.S. Dept. of Labor, Teach Them to Lift (Bull. No. 110, rev.ed.1965). See also National Safety Council, The Woman on the Job-- Her Health and Safety, 16-18 (1964), which states that it is better not to set definite group limits as there are too many variables and each woman should be considered in relation to the particular job involved as the strength of women varies greatly and not even physical size can be taken as a guide as there are many small women with high stamina who are accustomed to doing physical work.
 
 
 [7]
 The court and parties may find it helpful to have a job study performed which would analyze the weight-lifting requirements of each job and then classify the jobs according to the degree of strength and stamina required. Under such a system, employees may be able to demonstrate their capacity at different levels and bid on those jobs at or below the level at which they qualified. For example, a job requiring the moving of a 50-pound case from the floor to a shelf four feet high at a distance of 10 feet and a frequency of five times per shift can be expressed in terms of the foot-pounds required to perform the task and an employee who qualifies for it may bid on all jobs at or below that level of exertion
 
 
 [8]
 In fact, since a majority of the Jeffersonville employees were male, it is not unreasonable to assume that the officers of the Union were elected by a majority of male members and would, therefore, be responsive to their interests
 
 
 [9]
 Neal v. System Bd. of Adjustment, 348 F.2d 722 (8th Cir. 1965), relied on by Colgate is a case arising under the unique provisions of the Railway Labor Act and is not in point
 
 
 [10]
 Under the National Labor Relations Act, these latter two functions are performed by the N.L.R.B.'s Regional Director's staff. It would be anomolous indeed to require more of the untrained aggrieved party in EEOC proceeding or suit than is expected of the trained specialists on a Regional Director's staff
 
 
 [11]
 Given the court's finding as to Colgate's attendance at the pre-effective date EEOC conference, it is likely that Colgate was acting intentionally as of the effective date of Title VII. If this is so, then all those were on layoff prior to the effective date who were not recalled due to the discriminatory seniority system would also be entitled to relief for such loss as could be shown consistent with the requirements of the act
 
 
 [12]
 The court should also ascertain the feasibility of computing the damage to those who, while not laif off, were denied the opportunity to bid on higher paying jobs for which they may have been qualified. We would view it as unjust to permit Colgate to profit from its own voluntary destruction of the crewing-up records