William F. TURNER, Plaintiff-Appellee,

v.

TEXAS INSTRUMENTS, INCORPORATED, Defendant-Appellant.

No. 75–3200.

United States Court of Appeals, Fifth Circuit.

July 15, 1977.

Rehearing Denied Aug. 22, 1977.

Bennett W. Cervin, Stephen F. Fink, Dallas, Tex., for defendant-appellant.

Norman M. Bonner, Jr., Ft. Worth, Tex., Jack Greenberg, Marilyn Holifield, New York City, for plaintiff-appellee.

Before WISDOM, GEE and FAY, Circuit Judges.

GEE, Circuit Judge:

This is an appeal from the district court's judgment that Texas Instruments, Inc. (TI) violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a)(1), and the Civil Rights Act of 1866, 42 U.S.C. § 1981, by discharging William Turner (Turner), a black employee, as a result of racial discrimination. TI presents two points on appeal: first, that the trial judge erred in requiring TI to prove by clear and convincing evidence that it did not discriminate against Turner; and second, that the trial judge erred in holding that Turner proved by a preponderance that he was discharged because of his race. Both TI and Turner ask that we consider their arguments and the evidence adduced at trial and render judgment rather than remand. We oblige them by reversing the district court's judgment and ruling that TI did not violate either Title VII or section 1981 when it dismissed Turner.

In May 1970, Turner and three white employees, all workers at TI's Sherman, Texas, plant, returned from lunch away from the plant. While Turner parked his car, the other employees hurried to the plant to punch in on time. Two employees, Larry Gill and Larry Brown, reached the plant first. Brown punched in his card and that of Wilburn Burns, a white employee who was physically handicapped and thus came into the plant more slowly. Gill punched in his card and that of Turner. TI had a strict policy against an employee's punching in the time card of another or allowing another to punch in his. TI punished knowing violations of this policy by immediate discharge.

TI supervisors observed the employees' return from lunch, suspected that time-card violations might result, and investigated. Joe Lindsey, supervisor of Brown's and Burn's supervisors, talked with Brown. Brown admitted that he was aware of the TI policy and that he had punched in Burns' card but insisted that Burns had no idea of Brown's intention to do so and that he had punched Burns in as a gratuitous favor. Lindsey then talked with Burns, who admitted that he had been clocked in but denied that he knew anyone was going to do so. Lindsey recommended termination of Brown but continuation of Burns, because Burns had not knowingly violated the policy while Brown had.

Bob Mears, a different over-supervisor, dealt with Gill and Turner. After hearing that clock violations might be in progress,

Mears observed Turner as he entered the building. Mears reasoned that if Turner checked his card at the time clock he would be innocent of any knowing violation but that if Turner passed the time clock without checking it, then he was at least subject to suspicion. Unfortunately, Mears' acid test was based on the erroneous assumption that Turner's time card was in the rack; like many TI employees, Turner had left his card at his work bench deeper in the building so that his passage without checking the time clock proved nothing. Turner arrived at his work bench and noticed his card was missing. Gill then appeared, handed the time card to Turner and told him that he had clocked him in. Mears then approached and took the two into a nearby office.

In the office, under questioning from Mears, Gill admitted that he had clocked Turner in and stated that they had had an arrangement by which the passenger would clock in the person parking the car. Turner's response is a matter of controversy. Turner says that the meeting in the office never took place. The only meeting he recalls was one with all four employees, several supervisors and Don Adams of personnel. Mears, however, stated that in the office Turner admitted that he and Gill were punching each other in but that Turner claimed he thought the policy pertained only to starting time in the morning. Mears testified that at no time did Turner deny that he had knowingly allowed his card to be punched.

At the large meeting to which Turner referred, the four employees, Joe Lindsey, Bob Mears and Don Adams discussed the incident. All the employees admitted that a violation had taken place. Turner protested, according to the TI personnel, that he was unaware of the policy because he had received no employee handbook that explained it. After the four employees were sent from the office, the supervisors conferred and concluded that all but Burns had knowingly violated the time-card policy. Upon their return, the employees were told that all but Burns would be discharged. At no point in any of the foregoing events

was the subject of race discussed. Turner brought suit.

The district court ruled that TI had discriminated against Turner because of his race. It found that Turner was telling the truth when he said he did not know of the policy and that he had not agreed that Gill was to punch in for him. It found no credible evidence to show plaintiff's involvement. Although the district court found that TI believed that Burns was unknowingly checked in by his friend, it further found Burns' failure to report the violation of the time-card rule just as suspect as the claims against Turner. It found no material difference between Burns and Turner except race. Examining evidence that two out of the eight employees discharged for time-card violations between March 26, 1968, and December 4, 1970, were black and that 8.6% of the employees at the Sherman, Texas, plant were black, it found that blacks were three times as likely to be discharged for time-card violations as whites. In applying these facts to the law, the trial court held that the plaintiff had established a prima facie case and that TI had failed to prove by clear and convincing evidence that Turner was not discriminated against. The court therefore found that TI had discriminated against Turner.

The district court clearly erred in requiring TI to establish legitimate reasons for its actions by "clear and convincing evidence." In *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the Supreme Court delineated the burden of proof in individual employment discrimination cases: (1) the plaintiff must present a prima facie case of racial discrimination; (2) the employer then has the burden "to articulate some legitimate, nondiscriminatory reason" for his action; and (3) the plaintiff then has the burden of proving by a preponderance of evidence that the employer's reason was a pretext for discrimination. 411 U.S. at 802–05, 93 S.Ct. at 1825. *See Causey v. Ford Motor Co.,* 516 F.2d 416, 420 n. 6 (5th Cir. 1975); *Peters v. Jefferson Chemical*

*Co.,* 516 F.2d 447, 449–51 (5th Cir. 1975). In our case, therefore, the discharge of Turner, a black, and the retention of Burns, a white, under apparently similar circumstances stated a prima facie case. *See McDonald v. Santa Fe Trail Transportation Co.,* 427 U.S. 273, 280–285, 96 S.Ct. 2574, 2578–80, 49 L.Ed.2d 493, 501–02 (1976) (fact situation similar to this case).

■ Turner's statement of a prima facie case shifted to TI the burden of articulating legitimate, nondiscriminatory reasons for its action. It was not required, as the district court indicated, to present clear and convincing evidence of such reasons. We find no justification for casting upon the employer the extraordinary burden of proving his reasons by "clear and convincing evidence," the highest standard of proof applied in civil cases.[1] Nevertheless, the nature of the burden the employer bears in the second step of *McDonnell-Douglas* is unclear in this circuit. In *Peters v. Jefferson Chemical Co.,* 516 F.2d 447 (5th Cir. 1975), we suggested that the employer's burden is only one of production—coming forward with legitimate, nondiscriminatory reasons for the plaintiff's dismissal. 516 F.2d at 450. In *Pond v. Braniff Airways, Inc.,* 500 F.2d 161 (5th Cir. 1974), we indicated that the employer must prove his reasons by a preponderance of the evidence so that the risk of nonpersuasion on those factual questions lay on him. *Id.* at 167.[2] To resolve this confusion, we hold that the employer bears the burden of proving the

legitimate, nondiscriminatory reasons for his actions by a preponderance of the evidence. Upon proper proof of a legitimate reason for the employer's decision, the plaintiff then bears the burden of proving by a preponderance of the evidence that the articulated reason is a pretext for racial discrimination.

■ To rule otherwise would unduly limit a plaintiff's opportunity to respond to an employer's articulation of reasons. If an employer need only *articulate*—not prove—a legitimate, nondiscriminatory reason for his action, he may compose fictitious, but legitimate, reasons for his actions. The employer would have met his burden under *McDonnell-Douglas,* and the plaintiff would find himself attempting to prove that a reason without factual foundation— presumed true—was a pretext for discrimination. For example, an employer could articulate as his reason for dismissal that an employee had a poor attendance record when in fact the employee had a good attendance record. The employee's attendance record would be presumed to be poor, and the employee would have to show that his poor attendance record was not the real reason for his dismissal. We would not act consistently with our national policy in favor of eliminating racial discrimination in employment if we did not allow the plaintiff to challenge the factual validity of an employer's reasons offered to rebut a plaintiff's prima facie case.[3] Further, the em-

---

1. The only use of the clear and convincing standard in this area of which we are aware comes when plaintiffs prove that an employer discriminated against a class so that a presumption of back pay and individual injunctive relief arises. The employer may rebut the presumption with clear and convincing evidence that a discriminatee would not have been hired absent discrimination. *See, e. g., McCormick v. Attala County Board of Education,* 541 F.2d 1094, 1095 (5th Cir. 1976).

2. Although it is true that we have held that the burden shifted to a defendant-employer is one of *production* in age-discrimination cases, *see Bittar v. Air Canada,* 512 F.2d 582 (5th Cir. 1975), we have recently intimated that allocations of the burden of proof are not necessarily the same in age-discrimination cases and race- and sex-discrimination cases. *See Lindsey v.*

*Southwestern Bell Telephone Co.,* 546 F.2d 1123, 1124 n. 3 (5th Cir. 1977).

3. Conceivably, the plaintiff, as a part of his "pretext" burden of proof, could attempt to show that the employer had fabricated his reasons, leading to the inference that the reasons were *created* as a pretext to hide racial motivation in the employer's action. But the Supreme Court's usage of pretext in *McDonnell-Douglas* envisioned the use, by employers, of legitimate reasons for action to hide racial animus in decision making. In *McDonnell-Douglas* the factual validity of the employer's reasons was not in question and thus it sufficed merely to "articulate" them. But where the factual truth of the reason assigned is disputed, mere articulation cannot suffice. Our approach fills out

ployer benefits by utilizing these reasons to rebut the plaintiff's prima facie case—in essence, the reasons act as an affirmative defense to the prima facie discrimination claim—and the risk of nonpersuasion should fall on the party benefitting from the defense.

*McDonnell-Douglas* does not proscribe the approach we take in this case. Although *McDonnell-Douglas* stated only that the employer had a burden of *articulating* a legitimate, nondiscriminatory reason for his action, 411 U.S. at 802, 93 S.Ct. 1817, the Supreme Court did not elucidate the extent of that burden.[4] The primary question before the Court was whether the employer's articulated reasons could rebut a prima facie case. The factual basis of the employer's reasons was undisputed. We think that if the Court were presented with our situation—where the factual truth of the reason articulated is in dispute—it would require the employer to prove its reasons by a preponderance.

Thus, in situations such as ours, we will apply *McDonnell-Douglas* in this manner: the plaintiff must present a prima facie case of racial discrimination; the employer then has the burden of proving, by a pre-

ponderance of the evidence, that legitimate, nondiscriminatory reasons existed to support his action; and the plaintiff then has the burden of proving by a preponderance that the employer's articulated reason was a pretext for discrimination. Bearing these principles in mind and acceding to the parties' request that we decide this case without remand, we turn to the facts.

The district court's use of an incorrect legal standard allows us to review the findings of fact free of the clearly erroneous rule. *See Higginbotham v. Mobil Oil Corp.,* 545 F.2d 422, 433 (5th Cir. 1977).[5] We conclude that TI presented and proved legitimate, nondiscriminatory reasons for the disparity in treatment of Burns and Turner. The record indicates—and the district court specifically found—that TI supervisors and personnel employees concluded that Burns did not knowingly violate the time-card policy. A review of the record makes clear that TI supervisors and personnel employees truly believed that Turner knowingly violated the time-card policy. Even if TI wrongly believed that Turner knowingly violated this policy, if TI acted on this belief it was not guilty of racial discrimination.[6] TI's honest belief in Turn-

the *McDonnell-Douglas* framework in the context where an employer's articulated reasons are in question.

4. The Court said of the reason articulated by the employer in *McDonnell-Douglas*: "this suffices to discharge petitioner's *burden of proof* at this stage and to meet respondent's prima facie case of discrimination." 411 U.S. at 803, 93 S.Ct. at 1824 (emphasis supplied). "Burden of proof" in that context could mean the burden of producing evidence or could also include the burden of persuasion. *See* C. McCormick, Handbook on the Law of Evidence § 336 (2d ed. 1972). Similarly, the Court's requirement that an employer articulate "legitimate" reasons might imply a requirement that the employer prove the existence of his reasons by a preponderance. We hesitate to embrace these ambiguous passages to support our position.

5. It is true that under some circumstances we have held that use of the wrong legal standard may not taint or infect the trial court's findings of fact, so that we remain bound by the clearly erroneous rule. *See Smith v. United States,* 502 F.2d 512, 519 (5th Cir. 1974). But here we believe the district court required TI to present clear and convincing evidence of legitimate reasons for dismissal and, absent that, concluded

that no reasons were before the court. This taint is too pervasive for us to ignore.

6. This is not to say that Turner could not recover if the supervisors disbelieved his claim *because* of his race. *Cf. Pond v. Braniff Airways, Inc.,* 500 F.2d 161, 165–66 (5th Cir. 1974) (competency distinction based on suppositions of inherent capabilities of men and women suspect). But the record does not give the slightest hint that the supervisors looked to Turner's race, not to the objective events and his response to the accusation, in assessing whether he knowingly violated the time-card policy.

Nor does this say that Turner could not recover in a case where the employer's belief is so incredible in light of the facts found that the belief was not validly held and thus failed as proof by a preponderance of a valid reason for the employer's action. Here the district court ruled that the supervisors' belief was wrong, but this is not the question. The question is whether the supervisors truly believed that Turner was guilty of knowing time-card violations when Burns wasn't; the record clearly indicates the *bona fides* of the supervisors' belief.

er's knowing violation, contrasted with its belief that Burns had unknowingly violated the time-card rule, served as a legitimate reason for its disparate treatment of Burns and Turner. TI's proof requires Turner to show that the stated reasons were pretextural.

■ Turner attempted to raise the issue of pretext by using TI's past record of dismissal for time-card violations. The district court found, based on the evidence described earlier, that blacks at TI were three times more likely to be discharged for time-card violations than whites. Although we acknowledge that in some individual cases statistics may prove useful to show pretext, *see McDonnell-Douglas v. Green, supra,* 411 U.S. at 805, 93 S.Ct. 1817, here the sample upon which the trial court relied was far too small even to be statistically significant, much less sufficiently clear to have probative significance. *See Robinson v. City of Dallas,* 514 F.2d 1271, 1273 (5th Cir. 1975). With the exception of this evidence, Turner produced nothing suggesting that TI's reasons for his dismissal and the retention of Burns were pretextural. Turner failed to carry his burden of proof that TI's reasons for dismissal were pretextural.

We conclude that the trial court must be reversed. Although the court tried to respond to the fear that an employer might articulate nonexistent reasons for his action, it imposed too great a burden of proof on the employer. The employer is required to prove his legitimate, nondiscriminatory reasons only by a preponderance of the evidence. TI did so in this case by proving that it believed, even if wrongly, that Turner, but not Burns, was guilty of knowingly violating TI's time-card policy. We also conclude that after TI proved its reasons for dismissal Turner offered no significant evidence that those reasons were pretextural. The matter of race was not a factor in TI's decision. Title VII and section 1981 do not protect against unfair business decisions—only against decisions motivated by unlawful animus. We reverse the trial court's decision and render judgment for Texas Instruments.

REVERSED and RENDERED.