Mrs. Edna **RIVERA**

.v.

**NMU PENSION & WELFARE AND VACATION PLAN, NEW ORLEANS, LOUISIANA.**

Civ. A. No. 14091.

United States District Court
E. D. Louisiana,
New Orleans Division.

Sept. 4, 1968.

Richard D. Alvarez, Birdsall & Alvarez, New Orleans, La., for plaintiff.

Benjamin E. Smith, Smith, Scheuermann & Jones, New Orleans, La., for defendant.

HEEBE, District Judge:

As a result of her discharge on November 2, 1962, the plaintiff brought this suit under § 301 of the Labor Manage-

ment Relations Act, 29 U.S.C. § 185, against her former employer, NMU Pension & Welfare and Vacation Plan, seeking reinstatement, back pay and damages. Plaintiff alleges that in discharging her the defendant breached the collective bargaining agreement which was in effect at that time between her union, Office Employees International Union, Local 153 AFL–CIO, and her employer. Plaintiff did not join the union as a defendant. The defendant moves to dismiss for failure to state a "cause of action" and, alternatively, for summary judgment.

Article VII B of the collective bargaining agreement provides:

"The employer agrees not to dismiss any worker except for just and sufficient cause. Employees shall receive two (2) weeks' notice before being discharged. No employee shall be dismissed for cause unless he has received sufficient warning of such dismissal within a reasonable period prior to receiving notice of discharge, except in cases of an extremely serious or flagrant nature.

"When an employee is dismissed for cause he shall be given a hearing, if desired by either party, within forty-eight (48) hours. Two representatives designated by the NMU PENSION & WELFARE AND VACATIONS PLANS and two representatives designated by the Union shall make a hearing committee. If agreement is reached among the representatives, such agreement shall be final and binding on all parties. If agreement is not reached within ten (10) days, the matter shall be submitted to arbitration as provided in Article X."

Article X provides, in effect, that the grievance procedure set forth in Article VII B shall be the exclusive remedy for discharged employees.

After alleging the pertinent provisions of the collective bargaining agreement, the complaint, as amended, states:

"Complainant alleges that she received no warning of [her] dismissal nor any notice of dismissal at any time from her employer, and that no cause was given for her dismissal up to November 2, 1962, when her immediate superior instructed her not to take any more claims or perform other work in the office, and further, that no such cause existed.

"Complainant alleges that not until long after her dismissal was the cause therefor given as insubordination, which said cause is false as defendant well knows, and complainant hereby alleges that she has never committed an act of insubordination toward her immediate supervisor, Mrs. Zoie Cabral, or any of her duly appointed superiors.

"The second paragraph of Article VII B of said contract provides that an employee dismissed for cause shall be given a hearing, if desired by either party, within forty-eight (48) hours, and provides for procedures to be followed culminating with arbitration. Complainant alleges that no such a [sic] hearing was held, that she had no notice of same, and was not given an opportunity to present her side of the dispute herein, and was further advised not to proceed further with said matter and that said acts constitute unfair representation, and entitles [sic] her to redress against the defendant herein."

■  This case touches upon one of the more recent labor law developments which was still floundering in the throes of adolescent uncertainty prior to the maturing effect of Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). In that case the Supreme Court endorsed the right of an employee in certain situations to sue his employer without joining the union on a claim based on a collective bargaining agreement which provides for the settlement of differences arising under the agreement exclusively through arbitration or grievance procedures which are final and binding. Here we are concerned with but one facet of this still unfolding pan-

orama: what must the plaintiff-employee allege in such a suit?

The claim is based upon, and arises out of, the collective bargaining agreement. Consequently, when, as here, that contract contains provisions governing the manner in which contractual rights may be enforced, the employee is bound by those terms and cannot bypass the exclusive grievance procedures to air his claim in court. Republic Steel Corp. v. Maddox, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965).[1] Normally, this will prove to be an effective method of settling grievances. But when the acid of unfair representation corrodes the contractual forum, the employee, who through necessity has entrusted all of his rights to the union, is left completely remediless through no fault of his own. The union's conduct nullifies the effective mode of redress envisioned by the contract. Due to the union, it is no longer possible for the employee to obtain his contractual right—an *effective* forum. The employee should no longer be bound by a contractual provision limiting him to the contractual forum when he has been unable to secure an effective hearing in that forum. Fairness and reason demand that the employee in such a situation be granted an effective forum —a court of law. Consequently, when the employee is unable to secure the fair and impartial remedy contemplated by the contract due to the wrongful conduct of the union, a claim cognizable in court accrues to the aggrieved employee against his employer. Vaca v. Sipes, supra; Desrosiers v. American Cyanamid Co., 377 F.2d 864 (2d Cir. 1967); Richardson v. Communications Workers of America, 267 F.Supp. 403 (D.Neb.1967). The elements of this claim are two-fold: a breach of the collective bargaining agreement by the employer and a breach of the statutory duty of fair representation by the union. It is pertinent to note that collusion, duplicity, knowledge or other "participation" by the employer is not an element of the claim. Vaca v. Sipes, supra, 386 U.S. at 188 n. 12, 87 S.Ct. 903; Serra v. Pepsi-Cola General Bottlers, Inc., 248 F.Supp. 684 (N.D.Ill.1965); Ostrofsky v. United Steelworkers of America, 171 F.Supp. 782 (D.Md.1959), aff'd, per curiam, 273 F.2d 614 (4th Cir. 1960); Jenkins v. William Schluderberg-T. J. Kurdle Co., 217 Md. 556, 144 A.2d 88 (1958). It is sufficient if the union alone acted arbitrarily, discriminatorily or in bad faith in handling the employee's grievance without any knowledge or participation on the employer's part.

At first blush, it may seem somewhat strange to require misconduct on the part of the union in order for the employee to maintain a suit against his employer. There is strong logic in the argument that since it is the union who, in thwarting the operation of the contract, has wronged the employee, the employee's remedy should therefore be against the union and not the employer. Undoubtedly, the employee does have a remedy against the union, Vaca v. Sipes, supra. However, the employee was not wronged solely by the union. The employer also allegedly wronged the employee. It is this wrong which the employee seeks to remedy here. A suit against the union simply does not afford the plaintiff-employee complete reparation of the injury resulting from the employer's breach. Among other things, the plaintiff-employee seeks reinstatement, which the union is powerless to grant. Further, it would be unrealistic to suppose that an order compelling the union to fairly represent the employee in the grievance procedures would suffice. It smacks against common sense to believe that a judicial declaration is

---

1. See General Drivers, Warehousemen and Helpers Local Union No. 89 v. Riss & Co., 372 U.S. 517, 83 S.Ct. 789, 9 L.Ed.2d 918 (1963) and Haynes v. United States Pipe & Foundry Co.. 362 F.2d 414 (5th Cir. 1966), which make it clear that the legal principles applicable to arbitration clauses in this respect are equally applicable to agreements, such as this one, containing grievance procedures which are "final and binding."

capable of erasing the acrimony, bias, prejudice or other feeling which may have infected the union-employee relationship. With such strained relations, which in fact may only be heightened by a lawsuit, the possibility of the union dealing with the employer fairly on the employee's behalf is very slight indeed. It is clear that a suit against the employer is the only effective means of redressing the employer's wrong.

■ It does not matter at what stage of the settlement procedures the union misconduct occurs. It may occur at the outset by the union's refusal to take up the grievance, or at some intermediary point by refusing to further process the claim, or when at any other stage the union acts arbitrarily, discriminatorily or in bad faith in representing the union member. It is, of course, necessary for the employee to attempt to utilize the contractual remedy prior to instituting a lawsuit. However, it does not appear necessary to specifically allege this, although the artful pleader would most certainly include it in his allegations. It would be implicit in the allegations relating to the union's wrongful conduct since it would hardly be possible for the union to breach its duty in handling the claim unless the employee properly presented the claim in the first place.

■■ It is elementary that the complaint must allege at least the elements of the claim. 2A Moore, Federal Practice ¶ 8.13. The plaintiff here alleged the breach of the collective bargaining contract by the employer. The question is whether the plaintiff alleged wrongful conduct—arbitrary, discriminatory, or bad faith conduct—on the part of the union. The last sentence of the third paragraph of the complaint quoted above is the pertinent allegation. While the complaint could obviously have been more skillfully drafted and may be technically deficient in that the specific acts there alleged only assert further breaches of the contract, that the union is not mentioned, and that the conclusion of unfair representation is not supported without more by the mere facts which are alleged

to have constituted that conduct, we feel that the complaint can be construed to fall within the outermost bounds of Federal Rule of Civil Procedure 8(a) (2). The complaint does allege unfair representation, and unfair representation can result only through union conduct. In addition, this allegation does serve to put the defendant on notice as to the plaintiff's claim, thereby fulfilling the function of the complaint. This is true in spite of the fact that it is perhaps technically deficient due to the manner in which it is alleged in that it hinges upon certain alleged facts which, accepted as true but standing alone, do not constitute unfair representation.

The mere fact that we are here liberally allowing this complaint to stand should not be taken as any indication of our view of the merits. When this case reaches that stage, we will then require strict proof of arbitrary, discriminatory or bad faith conduct amounting to a breach of the union's duty of fair representation. At this point we are only holding, through a generous interpretation of the complaint, that the plaintiff has stated a claim upon which relief can be granted.

■ With respect to the defendant's motion for summary judgment, the defendant introduced uncontroverted affidavits showing that a meeting was held between representatives of the employer and union and that these representatives agreed that the plaintiff's discharge was for just cause. However, a controversy still exists as to whether the union representatives acted unfairly in their representation of the plaintiff. If they did unfairly represent the plaintiff, then the representatives' determination that her dismissal was for just cause would not be binding upon us, and we would have to determine that factual question anew. Because of these contested issues of fact, it would be improper to grant the motion for summary judgment.

Wherefore, it is the order of the Court, that the defendant's motion to dismiss the complaint and motion for summary judgment be, and the same are hereby, denied.