Sidney R. TURLEY et al., Plaintiffs,

v.

HALL'S MOTOR TRANSIT COMPANY, Accelerated Transport-Pony Express, Inc., Teamsters, Chauffeurs and Helpers Local Union No. 776, an unincorporated association affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, and Teamsters, Chauffeurs and Helpers Local Union No. 992, an unincorporated association affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Defendants.

Civ. No. 68–397.

United States District Court
M. D. Pennsylvania.

Feb. 27, 1969.

Shumaker, Williams & Placey, Harrisburg, Pa., for plaintiffs.

James A. Matthews, Jr., Samuel C. Harry, Morgan, Lewis & Bockius, Philadelphia, Pa., Fred Speaker, Jr., Harrisburg, Pa., for Hall's Motor Transit Co. and Accelerated Transport-Pony Express, Inc.

Handler, Gerber & Widmer, Harrisburg, Pa., for Local 776.

SHERIDAN, Chief Judge.

This is a ruling on motion by defendant, Teamsters, Chauffeurs and Helpers Local Union No. 776, to dismiss the complaint for failure to state a claim upon which relief can be granted.

Plaintiffs, all of whom were formerly employed by defendant, Accelerated Transport-Pony Express, Inc., are presently employed by Hall's Motor Transit Company. While employed by Pony at Hagerstown, Maryland, they were members of and represented by Teamsters, Chauffeurs and Helpers Local Union No. 992. Since their employment by Hall's, they are apparently now represented by 776. Jurisdiction is based on Section 301 of the Labor-Management Relations Act of 1947, as amended, 29 U.S.C.A. § 185.

In 1965, Hall's and Pony entered into an agreement under which Hall's acquired all the stock of Pony. In November 1965, the Interstate Commerce Commission granted Hall's temporary authority to operate Pony, which at that time had a freight operation in Hagers-

town, Maryland. The Hagerstown terminal was operated pursuant to terms of the National Motor Freight Agreement and the exclusive representative of all Hagerstown employees was 992. 776 was also a party to this agreement as the representative of Hall's employees at Harrisburg, Pennsylvania.

Shortly after acquiring temporary authority to operate Pony, Hall's filed a request for a change of operation and for a determination of seniority with the Eastern Conference Joint Area Committee as required by the contract. Section 2 of the request sought permission to transfer 76 men employed by Pony at Hagerstown to Harrisburg "to run the Pony system as Pony employees on a separate seniority board until such time as Accelerated-Pony loses its corporate identity. * * * When Accelerated-Pony loses its corporate identity, the redomiciled Accelerated-Pony drivers will become employees of Hall's Motor and offered seniority with Hall's as determined by the Change of Operations Committee." The request went before the Conference in the form of a dispute and the parties agreed that the decision of the Conference was to be final, conclusive and binding with no appeal. Hall's, 776 and 992 were all parties to the dispute which was decided by the Conference on written submission. On January 24, 1966, the Conference rendered a decision approving the transfer of the 76 men,[1] and provided that they "shall be maintained on a separate seniority board with company seniority until such time as the two operations are combined, at which time the 76 road men will be given terminal seniority as

of February 20, 1966 for work purposes, and will be given company seniority for layoff purposes and fringe benefits". The effect of this ruling was that Hagerstown employees' seniority for work opportunity was as of the date of the transfer, but they retained all seniority for benefit purposes. Plaintiffs contended that under the collective bargaining agreement seniority should have been "dovetailed" for all purposes, including work opportunity.

Plaintiffs continued in the employ of Pony until November 12, 1967, when they went on Hall's payroll.[2] On November 13, 1967, through 776 plaintiffs filed a grievance with the Joint Local City Grievance Committee. This Committee deadlocked on the issue, and it was submitted through various stages to the Conference which had initially decided the matter. The Conference, in a letter dated April 25, 1968, to the president of 776, stated:

"The Eastern Conference Joint Area Committee, in executive session, on April 22, 1968, reviewed this matter. Upon motion duly made, seconded and carried, the Committee ruled that the decision of the Eastern Conference Joint Area Committee, in the above case, was proper and is final and binding with no further appeal."

As a result of this decision, the instant suit was begun.

The complaint alleges in pertinent part that: all defendants are parties to the contract; the contract provided that when one company absorbs another and both are solvent, a new seniority list must be drawn which dovetails seniority from each company;[3] both Hall's and

---

1. The 18 plaintiffs are all that remain of the 76 men who were transferred to Harrisburg.

2. On February 1, 1968, the ICC approved the acquisition of the stock of Pony by Hall's. The complaint alleges that the transaction is or is expected to be presently consummated.

3. "(a) In the event that the employer absorbs the business of another private, contract or common carrier, or is a

party to a merger of lines, the seniority of the employees absorbed or effected thereby shall be determined by mutual agreement between the employer and the unions involved. ·
"In the application of this provision the following general rules shall apply:
"Merger, purchase, acquisition, sale, etc.
"(1) If both carriers involved are solvent then the seniority list of the two

Pony were solvent; the decision not to dovetail seniority for work purposes was contrary to the agreement; from an unspecified date [4] until they went on Hall's payroll in November 1967, they were "fraudulently" deceived by 776 in that they were told they had no standing to submit a grievance because they were subject to retransfer to Hagerstown; all defendants breached the dovetail provisions of the contract; 992, "as the exclusive bargaining agent for the plaintiffs," breached its duty of fair representation by "failing to insist upon dovetailing" as required by the agreement; Hall's and Pony breached the agreement by "conspiring with officials of" 776 and 992 in private and secret conference without the presence or knowledge of plaintiffs in order to obtain a decision, based on facts not of record, adverse to plaintiffs; 992 breached its duty of representation in various ways including acquiescence in a "fraudulent and discriminatory decision"; and 776 breached a duty of fair representation by "refusing to recognize the existence of a grievance," "fraudulently" representing to plaintiffs their lack of standing to file a grievance, by failing to support plaintiffs after the grievance was filed, and by perpetuating the conspiracy of all defendants to permit the Conference to render a decision "without hearing or knowledge of the plaintiffs herein so as to allow them to obtain a fair decision." The relief sought is an order requiring the dovetailing, and damages in an amount equal to wages and benefits lost by the refusal of defendants to dovetail the seniority lists.

■■ 776 argues that prior to the Conference decision of January 24, 1966, it had no duty to represent plaintiffs and therefore could not breach a non-existent duty. There is support for this argument. Vaca v. Sipes, 1967, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842. Plaintiffs have not pointed to any facts or authority for the proposition that 776 owed them any duty in connection with the Conference decision. On the contrary, plaintiffs allege that 992 was their exclusive bargaining representative. Plaintiffs argue, however, that it has charged that all defendants repudiated the agreement, that they did so pursuant to a conspiracy, and that all members of a conspiracy are parties to any wrongful act done by any member of the conspiracy. Whatever validity there may be to this argument in an action brought under Section 301,[5] the "conspiracy" in this case does not accuse 776 of conspiring to obtain a breach of the contract. The "conspiracy" charged is that 776 and the other defendants conspired to obtain a decision without formal hearing or notice to plaintiffs. The complaint does not set forth the contract

companies should be dovetailed so as to create a master seniority list based upon total years of service with either company. This is known as dovetailing in accordance with years of seniority.

"In the application of this rule it is immaterial whether the transaction is called a merger, purchase, acquisition, sale, etc. It is also immaterial whether the transaction involves merely the purchase of stock of one corporation by another, with two separate corporations continuing in existance [sic], and it is immaterial whether separate terminals of the companies are physically merged or not, subject, however, to Rules 4 and 5 below.

"(2) If, in the type of transaction described above, one of the companies is insolvent at the time of the transaction, then the employees of the insolvent company will go to the bottom of the master seniority list. The test of whether a company is solvent or insolvent is governed entirely by whether bankruptcy, receivership, composition for benefit of creditors, reorganization, or similar proceedings are pending in the State or Federal Court. If such proceedings are pending, the company is considered insolvent for the purposes of this rule."

4. Probably February 20, 1966, when the men were transferred to Harrisburg.

5. See International Longshoremen's & Warehousemen's Union v. Juneau Spruce Corp., 9 Cir. 1951, 189 F.2d 177, 13 Alaska 291; Wilson & Co. v. United Packinghouse Workers of America, N.D. Iowa 1960, 181 F.Supp. 809.

rules with respect to grievances or submissions and so it cannot be determined whether a decision without hearing or notice is a breach of the agreement. It is only through a strained reading of the complaint that it can be said that the conspiracy involved was to wrongfully breach the contract with respect to the dovetailing provisions. Moreover, when conspiracy is charged, there should be some details of time, place, and the alleged effect of the conspiracy. 2A Moore, Federal Practice para. 8.17[5] (2d ed. 1962); cf. Mandel v. Highway and Local Motor Freight Drivers, etc., Union, S.D.N.Y.1964, 246 F.Supp. 805.

■ The complaint is also deficient as it concerns the period from January 24, 1966, when the decision was rendered (or at least from February 20, 1966, when the transfer of the men to Harrisburg was effective) to November 13, 1967, when plaintiffs became employees of Hall's. There is nothing to indicate whether they came under the jurisdiction or protection of 776 or 992 during that time. If, as appears, 992 was their authorized bargaining representative during that period, it is difficult to see how the failure of 776 to act on plaintiffs' grievance would give rise to a cause of action against it. The complaint alleges that during that time 776 made fraudulent representations that plaintiffs had no standing to file a grievance. The meaning of this is not apparent. Did they lack standing in the sense that 776 could not act on the grievance because they were within 992's jurisdiction? Or was it because they came under the jurisdiction of neither? Or was it because the finality agreed to by the parties to the original submission of the dispute to the Conference foreclosed any further question? Intent and reliance are not shown. "In all averments of fraud * * *, the circumstances constituting fraud * * * shall be stated with particularity." Rule 9(b), Fed.R.Civ.P.; 2A Moore, Federal Practice para. 9.03 (2d ed. 1967).

■■ The complaint does not allege, but for purposes of this motion the court will assume, that plaintiffs, when they went on Hall's payroll in November 1967, came under the jurisdiction of 776. If this were the case, bad faith on the part of 776 in processing the grievance would give rise to an action for breach of duty of fair representation. It should be noted, however, that for the period after November 1967, they are charged with "failing to take a position in support of the plaintiffs," but no bad faith or fraud is alleged. Lack of good faith, improper motive or hostile discrimination are essential elements to be alleged in an action, under Section 301, by a member against his union. Vaca v. Sipes, supra; Hardcastle v. Western Greyhound Lines, 9 Cir. 1962, 303 F.2d 182; cf. Gainey v. Brotherhood of Railway and Steamship Clerks, 3 Cir. 1963, 313 F.2d 318. As stated in Ford Motor Co. v. Huffman, 1953, 345 U.S. 330, 338, 73 S.Ct. 681, 686, 97 L.Ed. 1048, "Inevitably differences arise in the manner and degree to which the terms of any negotiated agreement affect individual employees and classes of employees. The mere existence of such differences does not make them invalid. The complete satisfaction of all who are represented is hardly to be expected. A wide range of reasonableness must be allowed a statutory bargaining representative in serving the unit it represents, *subject always* to complete good faith and honesty of purpose in the exercise of its discretion." (Emphasis supplied.)

The cases cited by plaintiffs do not support their contentions. In Fiore v. Associated Transport, Inc., M.D.Pa.1966, 255 F.Supp. 596, this court refused to dismiss a complaint by a member against his union and employer where the complaint alleged that defendants' action in agreeing to the dovetailing of seniority lists at two locations was fraudulent, discriminatory and in bad faith. In Mandel v. Highway and Local Motor Freight Drivers, etc., Union, supra, it was alleged that the union's failure to prosecute grievances "in good faith" gave rise to a cause of action under Section

301. While only the motion of 776 is before this court, the failure to allege bad faith is applicable to some of the charges against 992 which has not moved to dismiss. See 2A Moore, Federal Practice para. 12.14 (2d ed. 1968).

An order will be entered granting leave to plaintiffs to file an amended complaint, failing which the complaint will be dismissed.