Mary SCIARAFFA et al., Plaintiffs,

v.

OXFORD PAPER COMPANY et al., Defendants.

Civ. No. 10–92.

United States District Court,
D. Maine, S. D.

Feb. 5, 1970.

G. Curtis Webber, Frank W. Linnell, Auburn, Me., Jack H. Simmons, Lewiston, Me., for plaintiffs.

Theodore H. Kurtz, Daniel T. Drummond, Jr., Hugh G. E. MacMahon, Portland, Me., for defendants.

## OPINION AND ORDER OF THE COURT

GIGNOUX, District Judge.

This action is brought by seven former female employees of defendant Oxford Paper Company (now merged into Ethyl Corporation) against Oxford Paper Company and Local 900 United Papermakers and Paperworkers AFL–CIO, plaintiffs' collective bargaining representative. The amended complaint, which is in four counts, sets forth two causes of action against each defendant: (1) a claim under Title VII of the Civil Rights Act of 1964, alleging employment discrimination on account of sex;[1] and

---

1. Section 703 of Title VII provides:

(a) It shall be an unlawful employment practice for an employer—

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's * * * sex * * *; or

(2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's * * * sex, * * *

\* \* \* \* \*

(c) It shall be an unlawful employment practice for a labor organization—

(1) to exclude or to expel from its membership, or otherwise to discrim-

inate against, any individual because of his * * * sex * * *;

(2) to limit, segregate, or classify its membership, or to classify or fail or refuse to refer for employment any individual, in any way which would deprive or tend to deprive any individual of employment opportunities, or would limit such employment opportunities or otherwise adversely affect his status as an employee or as an applicant for employment, because of such individual's * * * sex * * *; or

(3) to cause or attempt to cause an employer to discriminate against an individual in violation of this section. 42 U.S.C. § 2000e–2(a) and (c) (1964). Section 706(e) of Title VII provides for a civil action by an aggrieved employee. 42 U.S.C. § 2000e–5(e) (1964). *See* n. 3, *infra.*

(2) a claim under Section 301(a) of the Labor Management Relations Act of 1947, alleging breach of a collective bargaining agreement.[2] Plaintiffs seek both injunctive relief and damages in all counts.

Presently before the Court are defendants' motions for dismissal of, and for summary judgment on, all four counts of the complaint. For reasons to follow, the Court has concluded that the motions directed to the Title VII counts against both defendants and the Section 301 count against the defendant Oxford must be in all respects denied; but that the motion for dismissal of the Section 301 count against the defendant Union must be granted.

I

### The Title VII Counts Against Both Defendants

In their Title VII counts, plaintiffs allege that they were formerly employed in the finishing department at the Rumford, Maine mill of the Oxford Paper Company in jobs classified as "fan, count, sort-hydraulics," and had seniority in their jobs ranging from in excess of 14 years to in excess of 18 years. Plaintiffs were "bumped" from their jobs by other women with greater mill seniority, plaintiffs Sciaraffa, Cormier, Giroux, Perry and West on February 27, 1967, plaintiff Grenier on January 30, 1967, and plaintiff Buccina on January 23, 1967. Plaintiffs allege that these "bumps" were discriminatory because male employees with less seniority were not "bumpable" by women, even though many jobs now being performed by men could be adequately performed by women. On May 15, 1967, plaintiffs filed charges against defendants with the Equal Employment Opportunity Commission (EEOC) alleging violation of their civil rights because of discrimination against them on account of their sex. Almost a year later, on May 6, 1968, plaintiffs were notified by the Commission that it had been unable to obtain voluntary compliance. The present action was filed on May 31, 1968. Thereafter, the Commission completed its investigation and in a decision dated August 15, 1968 found the existence of reasonable cause to believe that defendants had violated the provisions of Title VII.

Defendants have raised by their motions various procedural defenses to the Title VII counts, which they say preclude recovery by some or all of the plaintiffs. These will be separately discussed.

### A.

Both defendants urge first that the Title VII counts should be dismissed because not brought within 90 days after charges were filed with the EEOC. Their argument is that under Section 706(e) of Title VII, the Commission has up to 60 days after the filing of a charge to attempt conciliation, and if it is unable to do so within the 60-day period, it must so notify the charging party, who must bring suit within 30 days thereafter.[3] In this case, the Commis-

---

2. Section 301(a) of the Labor Management Relations Act of 1947 reads:

   Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties. 29 U.S.C. § 185(a) (1964).

3. The pertinent part of Section 706(e) provides:

   If within thirty days after a charge is filed with the Commission * * * (except that * * * such period may be extended to not more than sixty days upon a determination by the Commission that further efforts to secure voluntary compliance are warranted), the Commission has been unable to obtain voluntary compliance with this subchapter, the Commission shall so notify the person aggrieved and a civil action

sion did not notify plaintiffs of its inability to effect conciliation until nearly a year after the filing of plaintiffs' charges. Although plaintiffs brought this action within 30 days of the notification, it is defendants' position that the statute required the Commission to complete its action within 60 days after the filing of the charges; and that at the end of this 60-day period, the 30-day period within which plaintiffs might file an action began to run.

To hold as urged by defendants would be to rule that an aggrieved party should be denied his day in court because of administrative delay by a commission over which he has no control. For this reason, it is not surprising that every appellate court which has considered the question has rejected defendants' interpretation of the statute. Cunningham v. Litton Industries, 413 F.2d 887 (9th Cir. 1969); Miller v. International Paper Co., 408 F.2d 283, 285–287 (5th Cir. 1959); Choate v. Caterpillar Tractor Co., 402 F.2d 357, 361 (7th Cir. 1968); see Stebbins v. State Farm Mutual Automobile Insurance Co., 413 F.2d 1100, 1101 (D.C. Cir. 1969).[4] For the reasons stated in the cited opinions, defendants' argument is rejected here. The Court holds that the 30-day period within which suit may be filed under

Section 706(e) does not begin to run until the charging party has received notice from the Commission of its inability to achieve voluntary compliance, regardless of the time the Commission has taken to process the charge. Plaintiffs filed their complaint in the present case within 30 days after receiving notice from the Commission that conciliation efforts had been unsuccessful. The complaint was timely filed.

### B.

Defendants urge next that the claims of plaintiffs Grenier and Buccina should be dismissed because they did not file their charges with the EEOC within 90 days after their alleged discriminatory layoffs. Defendants' contention is that under Section 706(d) of the Act, an aggrieved party must file a charge with the Commission within 90 days of the act of discrimination complained of.[5] It is defendants' position that since plaintiffs Grenier and Buccina were "bumped" from their jobs on January 30, 1967 and January 23, 1967 respectively, both dates being more than 90 days prior to May 15, 1967, the date when all plaintiffs filed their charges with the Commission, their present action is barred.

---

may, within thirty days thereafter, be brought against the respondent named in the charge * * *. 42 U.S.C. § 2000e–5(e) (1964).

The Commission, by regulation, has extended the time for processing all cases to 60 days except insofar as proceedings may be earlier terminated. 29 C.F.R. § 1601.25a (1969).

4. District Courts have also overwhelmingly held that a suit commenced within 30 days of notification has been timely filed. Antonopulos v. Aerojet-General Corp., 295 F.Supp. 1390 (E.D.Cal.1968); Pullen v. Otis Elevator Co., 292 F.Supp. 715 (N.D.Ga.1968); Peurala v. United States Steel Corp., Civil No. 68–C–3–5, 58 CCH Lab.Cas. ¶ 9135 (N.D.Ill.1968); Kendrick v. American Bakery Co., Civil No. 11490, 58 CCH Lab.Cas. ¶ 9146 (N.D.Ga.1968); Mondy v. Crown Zellerbach Corp., 271 F.Supp. 258 (E.D.La. 1967), rev'd on other grounds *sub nom.*

Oatis v. Crown Zellerbach Corp., 398 F.2d 496 (5th Cir. 1968); Dent v. St. Louis-San Francisco Railway Co., 265 F.Supp. 56 (N.D.Ala.1967); Ward v. Firestone Tire & Rubber Co., 260 F.Supp. 579 (W.D.Tenn.1966). Those which have held the other way have been either reversed or overruled by implication. Cunningham v. Litton Industries, Civil 67–952–PH, 66 L.R.R.M. 2697 (C.D.Cal. 1967), rev'd 413 F.2d 887 (9th Cir. 1969); Jefferson v. Peerless Pumps, Civil 68–1517–PH, 71 L.R.R.M. 3158 (C.D. Cal.1969); Miller v. International Paper Co., 290 F.Supp. 401 (S.D.Miss.1967), rev'd 408 F.2d 283 (5th Cir. 1969).

5. The pertinent portion of Section 706(d) reads:

A charge under subsection (a) of this section shall be filed within ninety days after the alleged unlawful employment practice occurred, * * *. 42 U.S.C. § 2000e–5(d) (1964).

■ It is clear that the filing of a charge with the EEOC within 90 days after the alleged unlawful practice occurs is a jurisdictional prerequisite to a subsequent court suit under Title VII. Bowe v. Colgate-Palmolive Co., 416 F.2d 711, 719 (7th Cir. 1969); Mickel v. South Carolina State Employment Service, 377 F.2d 239 (4th Cir.), cert. denied, 389 U.S. 877, 88 S.Ct. 177, 19 L. Ed.2d 166 (1967).[6] However, if the alleged violation is deemed to be "continuing," it has been consistently held that the 90-day period does not bar an ensuing court action. Cox v. United States Gypsum Co., 409 F.2d 289, 290 (7th Cir. 1969); Banks v. Lockheed-Georgia Co., 46 F.R.D. 442 (N.D.Ga.1968); Culpepper v. Reynolds Metals Co., 296 F.Supp. 1232, 1236 (N.D.Ga.1968); King v. Georgia Power Co., 295 F.Supp. 943, 946 (N.D.Ga.1968).

■ It may be conceded that a typical layoff, without more, is not a continuing event, but is a completed act at the time it occurs, so that a charge alleging a discriminatory layoff must ordinarily be filed within 90 days thereafter. Burney v. North American Rockwell Corp., 302 F.Supp. 86, 92 (C.D.Cal. 1969); see EEOC Opin.Ltr. 1/11/66, LRX 1892a. Cf. Hutchings v. United States Industries, Inc., 309 F.Supp. 691 (E.D.Tex.1969) (discontinuance of job assignment not a continuing event); Younger v. Glamorgan Pipe & Foundry Co., 310 F.Supp. 195 (D.W.Va.1969) (transfer not a continuing event); Culpepper v. Reynolds Metals Co., 296 F. Supp. at 1235 (failure to promote not a continuing event). However, in the present case, the EEOC charge filed by each plaintiff reads:

I was bumped off my job by other women employees from another department who had greater seniority. The employees who bumped me should have bumped male employees with lesser seniority. The Union grievance committee which is composed of men refused to process my complaint and arbitrarily dismissed it. I have been deprived of my employment contrary to the provisions of the labor-management contract in force between the company and the Union *and am being refused any consideration or relief.* (Emphasis added.)

The underscored language suggests, albeit somewhat inartfully, a claim of continuing discrimination, after a discriminatory layoff, resulting in plaintiffs' inability to regain the employment of which they had been improperly deprived. Furthermore, the record before the Court shows that under the collective bargaining agreement referred to in the charge, the company was obligated to recall laid-off employees in accordance with their seniority for a period of at least one year following the layoff. And, so far as the charge against the Union is concerned, the record discloses that a significant aspect of plaintiffs' complaint is the alleged discriminatory refusal by the Union to process plaintiffs' grievances arising from the layoffs in accordance with the contract requirements, conduct which it is charged continued at least until February 14, 1967.[7] Cf. Moreman v. Georgia Power Co., 310 F.Supp. 327 (N.D.Ga.1969).

In Cox v. United States Gypsum Co., 409 F.2d at 290–291, the court held that an EEOC charge which explicitly alleged only a "continuing" discriminatory layoff should be read to provide a sufficient foundation for an action based on discrimination in failing to recall the plaintiffs. In so concluding, the court noted that in that case, as here, a layoff, as distinguished from a discharge, suggests the possibility of reemployment, and that the collective bargaining agree-

---

6. As the court observed in Bowe v. Colgate-Palmolive Co., 416 F.2d 711 (7th Cir. 1969):

This provision [Section 706(d), *supra*] serves two important purposes. First, it notifies the charged party of the asserted violation. Secondly, it brings the charged party before the EEOC and permits effectuation of the Act's primary goal, the securing of voluntary compliance with the law. *Id.* at 719.

7. *See* Part II, B, of this opinion, *infra.*

ment required the company to consider seniority in making a recall. The court also observed that, as here, the charges filed with the Commission had been drafted by lay persons; that the company had received notices of other similar charges at or about the same time; and finally, that the Commission had accepted the charges as timely filed. As to the last factor, the court stated that "the commission's decision to process a charge is important in determining whether the charge is adequate." *Id.* at 291. Having in mind the liberal treatment to be afforded a lay-initiated proceeding, other courts have similarly construed imprecisely drafted EEOC charges as sufficiently alleging "continuing" violations of the Act. *E. g.*, King v. Georgia Power Co., *supra*; Banks v. Lockheed-Georgia Co., *supra*.[8]

■■ As was the court in *Cox*, this Court is persuaded that plaintiffs Grenier and Buccina should not be denied, at this stage of this proceeding, the opportunity to establish acts of discrimination continuing beyond the dates of their layoffs and within 90 days prior to the filing of their charges with the Commis-

sion. Accordingly, the Court holds that the charges filed by them with the EEOC furnish a sufficient basis for their present actions.[9]

### C.

Defendants urge finally that the Title VII action must be dismissed because the discriminatory acts alleged in the complaint differ materially from those alleged in the charges filed by plaintiffs with the EEOC.

■ Two competing policies must be weighed in determining whether there is a material variance between charges which have been filed with the EEOC and the allegations of the complaint in a subsequent court suit. The first is that an EEOC charge must sufficiently inform the Commission of the nature of the alleged unlawful practice so that it can make a reasonable attempt at the "conciliation" contemplated by the Civil Rights Act.[10] To permit a civil action based upon allegations other than those presented to the Commission would permit a plaintiff to bypass the conciliation procedures of the Act and thereby to frustrate its purpose.[11] Accordingly,

---

8. Significantly, the Commission, in its reasonable cause decision of August 15, 1968 in this case, also characterized the alleged violation as "continuing."

9. In view of this conclusion, the Court does not reach the question of whether these two plaintiffs could intervene in any event as members of a class of aggrieved persons. It is now settled that a class action can be maintained under Title VII, and that only one member of the class need file timely charges with the EEOC. Oatis v. Crown Zellerbach Corp., 398 F.2d 496, 499 (5th Cir. 1968); Jenkins v. United Gas Corp., 400 F.2d 28, 35 (5th Cir. 1968); Miller v. International Paper Co., 408 F.2d 283, 284–285 (5th Cir. 1969); Bowe v. Colgate-Palmolive Co., 416 F.2d 711, 719–720 (7th Cir. 1969). While this suit is not technically denominated a class action, the issues presented, and the interests of all plaintiffs, are identical. Therefore, there is substantial merit in these plaintiffs' contention that it would be little more than a futile waste of time to dismiss their claims at this point.

10. As the court stated in Edwards v. North American Rockwell Corp., 291 F.Supp. 199 (C.D.Cal.1968):

> The primary purpose in setting up the EEOC was to establish a method of eliminating unlawful employment practices, where actually found to exist, through conference, conciliation, and persuasion without the necessity of instituting civil actions. *Id.* at 203.

11. *See* Stebbins v. Nationwide Mutual Insurance Company, 382 F.2d 267 (4th Cir. 1967), cert. denied, 390 U.S. 910, 88 S. Ct. 836, 19 L.Ed.2d 880 (1968), where the court observed:

> Having reviewed the legislative history of the Act, as well as its language, we agree with the District Judge that the plaintiff could not bypass the federal agency and apply directly to the courts for relief. Congress established comprehensive and detailed procedures to afford the EEOC the *opportunity* to attempt by administrative action to conciliate and mediate unlawful employment practices with a view to obtaining voluntary compliance. The plaintiff

the courts have required that the complaint in a court suit cannot be based upon wholly new derelictions which were not presented to or considered by the Commission. Edwards v. North American Rockwell Corp., 291 F.Supp. at 203–205; Allen v. Lockheed-Georgia Co., Civil No. 11896, 61 CCH Lab.Cas. ¶ 9333 (N.D.Ga.1968). *Cf.* Stebbins v. Nationwide Mutual Insurance Company, *supra*, n. 11.

On the other hand, the Civil Rights Act is designed to protect those who are least able to protect themselves. Complainants are seldom lawyers.[12] As the court stated in King v. Georgia Power Co., *supra*:

> It appears that a large number of the charges with EEOC are filed by ordinary people unschooled in the technicalities of the law. As stated in the brief filed by EEOC: "To compel the charging party to specifically articulate in a charge filed with the Commission, the full panoply of discrimination which he may have suffered may cause the very persons Title VII was designed to protect to lose that protection because they are ignorant of or unable to thoroughly describe the discriminatory practices to which they are subjected." (citations omitted)
>
>> The correct rule is that the complaint in the civil action is confined to those issues the original complaint has standing to raise, but may properly encompass any such discrimination like or reasonably related to the allegations of the charge and growing out of such allegations during the pendency of the case before the Commission. 295 F.Supp. at 947.

It is against this background that the courts have generally required no more than that the charge provide the Commission with general notice of the matter to be investigated, and that the issues properly presented in a subsequent court action may include those which grow out of or are reasonably related to the Commission's investigation. Bowe v. Colgate-Palmolive Co., 416 F.2d at 720, n. 10; Cox v. United States Gypsum Co., 409 F.2d at 290–291; Younger v. Glamorgan Pipe & Foundry Co., 310 F.Supp. at 195; Burney v. North American Rockwell Corp., 302 F.Supp. at 89–90; Logan v. General Fireproofing Co., 309 F.Supp. 1096 (W.D.N.C.1969); King v. Georgia Power Co., *supra*; *see*: Note, Discrimination in Employment and in Housing, 82 Harv.L.Rev. 834, 859 (1969). The prevailing rule was stated by the court in Jenkins v. United Gas Corp., supra, as follows:

> * * * the charge is the catalyst which starts the *informal* conciliation proceedings of EEOC. It is in keeping with the purposes of the Act to keep the procedures for initiating action simple. It was anticipated that the charge would be filed by a "person claiming to be aggrieved." * * * For a lay-initiated proceeding it would be out of keeping with the Act to import common-law pleading niceties to this "charge," or in turn to hog-tie the subsequent lawsuit to any such concepts. All that is required is that it gives sufficient information to enable EEOC to see what the grievance is about. 400 F.2d at 30, n. 3. (Emphasis in original.)

Applying the foregoing principles to the present case, the Court is satisfied that the allegations of the complaint are sufficiently related to the charges filed with the Commission to permit this action to proceed. The EEOC charges and the material allegations of the complaint are set out in the margin.[13] It is true

---

must therefore seek his administrative remedies before instituting court action against the alleged discriminator. *Id.* at 268.

12. In recognition of this fact, the EEOC provides a simple charge form, which allows space for only a brief factual summary of the alleged grievance. *See* n. 14, *infra.*

13. Identical charges were filed with the EEOC. They read:

I was bumped off my job by other women employees from another department who had greater seniority. The

that the allegations in the complaint are broader than those in the EEOC charges. The charges filed with the Commission alleged discriminatory discharges because of sex; they did not expressly allege that the discharges were the consequence of the discriminatory seniority, promotion and job classification systems detailed in the complaint. However, as plaintiffs point out, the charges simply stated, in laymen's language, the "unfair thing that happened"[14] to plaintiffs, that is, the discriminatory discharges, without attempting to specify the underlying causes of the alleged discriminatory acts, that is, the discriminatory employment system maintained by the company. Moreover, the Commission accepted the charges as the basis for a comprehensive investigation, as a result of which it found reasonable cause to believe that plaintiffs' discharges were the result of the underlying patterns of discrimination alleged in the present complaint.[15] It is thus evident that the brief statement of facts in the charges filed with the Commission gave it sufficient notice of the nature of the discrimination complained of so that it was able to make the investigation and conciliation efforts contemplated by the Act. It is equally

employees who bumped me should have bumped male employees with lesser seniority. The Union grievance committee which is composed of men refused to process my complaint and arbitrarily dismissed it. I have been deprived of my employment contrary to the provisions of the labor-management contract in force between the company and the Union and am being refused any consideration or relief.

The relevant portions of the complaint against Oxford are as follows:

Said bumps discriminated against plaintiffs on account of their sex in the following respects:

(a) There were other jobs in the mill which the female employees who bumped plaintiffs were qualified to perform which were occupied by male employees possessing less mill seniority than the bumping employees which jobs were not offered to the bumping employees.

(b) There were other jobs in the mill which plaintiffs were qualified to perform which were occupied by male employees posessing less mill seniority than the plaintiffs which jobs were not offered to the plaintiffs.

(c) Plaintiffs were vulnerable to being bumped despite their considerable accumulations of seniority because they and all other female employees of the defendant Oxford had not been offered opportunities for advancement into non-bumpable jobs for which they were qualified because defendant had classified these jobs for many years as "men's jobs" without regard to women's ability to perform them.

(d) Plaintiffs were vulnerable to being bumped despite their considerable accumulations of seniority because the Fan, Count, Sort-Hydraulics job was classified with the counter girl job in an entrance box whereas application of the same standards applied to "men's jobs" for determining lines of promotion would have required that the two jobs be separated in a line of promotion with the counter girl job being the entrance job. The relevant allegations of the complaint against the Union are the following:

Defendant Local 900 discriminated against plaintiffs on account of their sex in the following respects:

(a) By actively collaborating with the defendant Oxford to restrict all female employees to "women's jobs" and limiting them to entrance jobs without providing opportunity for advancement into non-bumpable jobs which women were capable of performing.

(b) By refusing to process in the customary manner plaintiffs' request for reorganization of the promotion chart in the finishing department so that the Fan, Count, Sort-Hydraulics job would be separated from the counter girl job and the former occupation would be placed in a separate box in a line of promotion above the entrance job and therefore be insulated from bumping.

(c) By refusing to seek to open up to women new jobs in the mill traditionally performed by men though capable of being performed by women.

14. The EEOC form simply requires the complainant to "Explain what unfair thing was done to you."

15. It has been held that the Commission's decision to process a charge is a significant factor in determining whether the charge is adequate. Cox v. United States Gypsum Co., 409 F.2d 289, 291 (7th Cir. 1969); Choate v. Caterpillar Tractor Co., 402 F.2d 357, 360 (7th Cir. 1968).

clear that the issues raised by the present complaint are well within the compass of those which were developed in the course of the Commission's investigation.

Under the circumstances disclosed by the present record, the Court cannot say that there is such a material variance between the EEOC charges and the allegations of the complaint that plaintiffs must be denied their day in Court.

## II

*The Section 301 Count Against Oxford*

Plaintiffs' Section 301 count against Oxford, after repeating the material allegations of the Title VII count, alleges that plaintiffs were "bumped" from their jobs in violation of the seniority provisions of the collective bargaining agreement between Oxford and the Union.[16] Plaintiffs further allege that their efforts to exhaust their contractual remedies were frustrated by the Union's breach of its duty of fair representation by failing to process plaintiffs' grievances, in good faith and without discrimination against them on account of their sex, beyond the first step of the grievance procedure provided by the contract.[17] Oxford attacks the sufficiency of this count on two grounds.

## A.

Oxford first seeks dismissal of the Section 301 count because it was brought more than six months after the alleged breach occurred. Section 301 contains no provision limiting the time within which suit must be brought. Ox-

ford's argument is that since in order to sustain their action, plaintiffs must show that the Union breached its duty of fair representation,[18] and since a breach of that duty may be an unfair labor practice,[19] the courts should apply to Section 301 suits the six-month limitation provision governing unfair labor practice proceedings before the National Labor Relations Board. *See* 29 U.S.C. § 160(b) (1964).

■ The short answer to Oxford's contention is that it has been rejected by the United States Supreme Court. In International Union United Automobile etc. Workers v. Hoosier Cardinal Corp., 383 U.S. 696, 701–705, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966), the Court refused to read a uniform time limitation into Section 301, and specifically held that the timeliness of a Section 301 suit for breach of a collective bargaining agreement is to be determined by reference to the appropriate state statute of limitations. *Id.* at 704–705, 86 S.Ct. 1107. Similarly, in Gray v. International Association of Heat and Frost Insulators and Asbestos Workers, Local No. 51, 416 F.2d 313 (6th Cir. 1969), it was held, in a closely related context, that the timeliness of an unfair representation action against a union should be governed by the applicable state statute of limitations. In accord with these authorities, this Court holds that the timeliness of plaintiffs' Section 301 suit against Oxford is to be determined by reference to the state limitation applicable to similar suits, which in this case is six years. *See* 14 M.R.S.A. § 752 (1964). The action was timely brought.

---

16. More specifically, plaintiffs charge that the layoffs violated Article VII, Section 1(b) of the contract, which provides in substance that department and mill seniority shall govern and promotion charts must be followed when employees are laid off.

17. Article XI, Section 4, of the collective bargaining agreement between Oxford and the Union establishes a four-step grievance procedure culminating in binding arbitration.

18. *See* Part II, B, of this opinion, *infra.*

19. *See* Miranda Fuel Co., 140 N.L.R.B. 181 (1962), enforcement denied, N. L. R. B. v. Miranda Fuel Co., 326 F.2d 172 (2d Cir. 1963); Local Union No. 12, United Rubber, etc. Workers v. N. L. R. B., 368 F.2d 12 (5th Cir. 1966), cert. denied, 389 U.S. 837, 88 S.Ct. 53, 19 L. Ed.2d 99 (1967); Bankers Warehouse Co., 146 N.L.R.B. 1197, 1200 (1964). *But see* Lewis v. Shubert, 300 F.Supp. 174 (W.D.Mo.1969).

### B.

Oxford next challenges the jurisdiction of this Court on the ground that plaintiffs have not exhausted their contract grievance procedures before applying for judicial relief.

■■■■ It is now well established that as a general proposition an employee must exhaust the contract grievance procedures before he can maintain an action against his employer for breach of a collective bargaining agreement. Republic Steel Corp. v. Maddox, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965). On the other hand, it is equally settled that an employee may seek judicial relief against his employer in a Section 301 suit where his union has failed to process his grievance in good faith and without arbitrary or discriminatory conduct toward him. Vaca v. Sipes, 386 U.S. 171, 183–188, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967); Williams v. Pacific Maritime Association, 384 F.2d 935 (9th Cir. 1967), cert. denied, 390 U.S. 987, 88 S.Ct. 1181, 19 L.Ed.2d 1290 (1968); Desrosiers v. American Cyanamid Company, 299 F.Supp. 162 (D. Conn.1969); Rivera v. NMU Pension and Welfare and Vacation Plan, 288 F.Supp. 874 (E.D.La.1968); see Boone v. Armstrong Cork Co., 384 F.2d 285, 292 n. 10 (5th Cir. 1967); O'Sullivan v. Getty Oil Co., 296 F.Supp. 272 (D.Mass. 1969); cf. Glover v. St. Louis-San Francisco Railway Co., 393 U.S. 324, 329–331, 89 S.Ct. 548, 21 L.Ed.2d 519 (1969); Desrosiers v. American Cyanamid Co., 377 F.2d 864 (2d Cir. 1967).

Vaca v. Sipes, *supra*, is, of course, the leading case. There the Supreme Court pointed out that under some circumstances an aggrieved employee may sue despite a failure to exhaust contractual remedial procedures. The Court noted that one such situation "arises if * * * the union has sole power under the contract to invoke the higher stages of the grievance procedure, *and* if * * * the employee-plaintiff has been prevented from exhausting his contractual remedies by the union's *wrong-ful* refusal to process the grievance." 386 U.S. at 185, 87 S.Ct. at 914. (Emphasis in original). Continuing, the Court stated the applicable rule as ·follows:

> * * * [W]e think the wrongfully discharged employee may bring an action against his employer in the face of a defense based upon the failure to exhaust contractual remedies, provided the employee can prove that the union as bargaining agent breached its duty of fair representation in its handling of the employee's grievance. *Id.* at 186, 87 S.Ct. at 914.

The Court in *Vaca* further observed that the duty of fair representation is breached "when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Id.* at 190, 87 S.Ct. at 916. *See* Humphrey v. Moore, 375 U.S. 335, 342, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964); Ford Motor Co. v. Huffman, 345 U.S. 330, 337–338, 73 S.Ct. 681, 97 L.Ed. 1048 (1953).

■■■ Turning to the case at bar, for the purposes of withstanding Oxford's motion to dismiss, the amended complaint sufficiently alleges that plaintiffs' efforts to exhaust their contractual remedies were frustrated by the Union's breach of its duty of fair representation by failing to process their grievances beyond the first step of the contract grievance procedures in good faith and without discrimination. In addition, plaintiffs' affidavits in opposition to the motion for summary judgment plainly present an issue of fact as to whether the failure of the Union to process plaintiffs' grievances was arbitrary, discriminatory, or in bad faith, and thus a breach of its duty of fair representation within the compass of *Vaca*. It is undisputed that the Union had exclusive control of the grievance process under the contract. The uncontroverted record discloses that each of the plaintiffs filed a grievance with the Union shortly after she was laid off; that the Union processed each grievance through the first step of the contract grievance procedure; that the grievance was denied

by the company at the first step; that the Union Grievance Committee and Executive Board decided not to process the grievance further; and that this decision was approved by a 39 to 38 vote of the Union membership at a meeting held on February 14, 1967. It is true that none of the plaintiffs attempted to appeal this action to the International Union, as permitted by the International's Constitution.[20] Oxford argues that this failure to exhaust their intra-union appeal procedures is fatal to plaintiffs' present action. *See* Harrington v. Chrysler Corp., 303 F.Supp. 495 (E.D.Mich.1969). But plaintiffs' affidavits uniformly state that they were at no time advised that they had any right of appeal. *Cf.* Desrosiers v. American Cyanamid Co., 299 F.Supp. 162. Plaintiffs' affidavits also raise serious doubt as to the fairness of the procedure by which the vote not to process their grievances further was taken by the predominately male union membership.[21] Furthermore, since the Union had only three days under the contract to appeal the company's denial in the first step, it is obvious that any effort by plaintiffs to appeal the membership decision to the International Union would have been futile.[22] If the plaintiffs can establish their assertions, they may well be suffi-cient to establish that the Union's conduct was arbitrary, discriminatory, or in bad faith, and thereby to call into play the exception of the exhaustion requirement established by *Vaca*. Under these circumstances, genuine issues of material fact are presented. Plaintiffs are entitled to prove their allegations, and Oxford's motion for summary judgment, as well as its motion to dismiss, must be denied.

### III

*The Section 301 count against the Union*

Plaintiffs' Section 301 count against the Union charges the Union with breach of its duty of fair representation by reason of its failure to process plaintiffs' grievances diligently and in good faith. In this count plaintiffs purport to state a cause of action under, and to predicate the jurisdiction of this Court on Section 301(a) of the Labor Management Relations Act,[23] which confers jurisdiction upon the federal district courts over suits for violations of collective bargaining contracts. Auto Workers v. Hoosier Cardinal Corp., 383 U.S. at 697, 86 S.Ct. 1107. Nowhere in this count, however, do plaintiffs charge the Union with a contract violation; rather, the

---

**20.** Article XIX, Sec. 9 of the Constitution of the United Papermakers and Paperworkers AFL–CIO provides:

> Sec. 9. (a) Any member, local union or local union officer who feels that he has received injustice by any action or decision of any other member, officer, local union or agent of this International Union shall have the right of appeal; first, to his local union; second, to the International President and third to the International Executive Board by complaint filed with the International Secretary-Treasurer. Failing to receive satisfaction through this procedure, he shall have a right to appeal to the convention.
>
> (b) Any member failing to exhaust this procedure in sequence shall be deemed to have accepted the previous conclusion.

**21.** For example, the affidavit of plaintiff Lorraine Perkins includes the following:

> At a union meeting held on February 14, 1967, the membership voted on whether or not to process our grievance further. The vote was taken several times and everyone was very confused. Finally it was announced that the vote, which was by show of hands, had ended in a tie. President Garneau of the union announced that he would vote to break the tie against processing the grievance any further. He then slapped the grievance paper on the table and said, That is it." [sic] or words to that effect. No one every [sic] informed me that I had any further right to appeal of the decision of the membership.

**22.** Article XI, Sec. 4(b) of the contract gives the union three days to appeal the company's answer in the first step, and provides that a grievance shall be settled on the basis of the company's last answer unless it is appealed by the union within that time.

**23.** Section 301(a) is set out in n. 2, *supra*.

sole allegation is that the Union violated its duty of fair representation, which is a statutory duty arising under the federal labor laws and not a contractual obligation. Vaca v. Sipes, 386 U.S. at 177 and at 201, 87 S.Ct. 903 (Fortas, J., concurring); Humphrey v. Moore, 375 U.S. at 355, 73 S.Ct. 681 (Goldberg, J., concurring) and at 360 (Harlan, J., concurring and dissenting); Williams v. Pacific Maritime Association, 384 F.2d at 936–937.[24] See Cox, Rights under a Labor Agreement, 69 Harv.L.Rev. 601

(1956). The combined research of the Court and counsel has disclosed no case in which it has been held that Section 301(a) provides the jurisdictional basis for a federal court action against a union for breach of its statutory duty of fair representation, and the plain language of the statute precludes such a result.[25]

Since Section 301(a) is the only ground upon which plaintiffs assert the jurisdiction of this Court over this count, the

---

24. As the Supreme Court stated in Vaca:
   It is now well established that, as the exclusive bargaining representative of the employees in Owens' bargaining unit, the Union had a statutory duty fairly to represent all of those employees, both in its collective bargaining with Swift, see Ford Motor Co. v. Huffman, 345 U.S. 330 [73 S.Ct. 681, 97 L.Ed. 1048]; Syres v. Oil Workers International Union, 350 U.S. 892 [76 S.Ct. 152, 100 L.Ed. 785], and in its enforcement of the resulting collective bargaining agreement, see Humphrey v. Moore, 375 U.S. 335 [84 S.Ct. 363, 11 L.Ed.2d 370]. The statutory duty of fair representation was developed over 20 years ago in a series of cases involving alleged racial discrimination by unions certified as exclusive bargaining representatives under the Railway Labor Act, see Steele v. Louisville & N. R. Co., 323 U.S. 192, [65 S.Ct. 226, 89 L.Ed. 173]; Tunstall v. Brotherhood of Locomotive Firemen, 323 U.S. 210, [65 S.Ct. 235, 89 L.Ed. 187], and was soon extended to unions certified under the N.L.R.A., see Ford Motor Co. v. Huffman, *supra*. Under this doctrine, the exclusive agent's statutory authority to represent all members of a designated unit includes a statutory obligation to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct. Humphrey v. Moore, 375 U.S., at 342 [84 S.Ct. at 367]. It is obvious that Owens' complaint alleged a breach by the Union of a duty grounded in federal statutes, and that federal law therefore governs his cause of action. *E. g.*, Ford Motor Co. v. Huffman, supra. 386 U.S. at 177, 87 S.Ct. at 909.

25. The cases upon which the plaintiff relies are plainly distinguishable. Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967) and Humphrey v. Moore, 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964) were both reviews of state court suits. The Court held no more than that the cause of action against the union was one which arose under, and was governed by, federal law. 386 U.S. at 177, 87 S.Ct. 903, 375 U.S. at 343–344, 84 S.Ct. 363. Similarly, in Brady v. Trans World Airlines, 401 F.2d 87 (3rd Cir. 1967), the court found that the employee's suit against the union raised a federal question, and that subject matter jurisdiction was therefore present under 28 U.S.C. §§ 1331 and 1337 (1964). *Id.* at 94. This would also appear to have been the basis of federal court jurisdiction in Lewis v. Shubert, 300 F.Supp. 174 (W.D.Mo.1969) and Williams v. Pacific Maritime Association, 384 F.2d 935 (9th Cir. 1967). In Desrosiers v. American Cyanamid Co., 299 F.Supp. 162 (D.Conn.1969) the claims against the union were not before the court. Insofar as it appears, the jurisdictional grounds for the suit against the union was Section 102 of the Labor Management Reporting and Disclosure Act of 1959, 29 U.S.C. § 412 (1964). Acuff v. United Papermakers and Paperworkers AFL–CIO, 404 F.2d 169 (5th Cir. 1968) was a suit to compel arbitration and hence is inapposite here. The jurisdictional basis for the suit in St. Clair v. Local Union No. 515, International Brotherhood of Teamsters, Warehousemen and Helpers of America, Civil No. 19215, 61 CCH Lab.Cas. ¶ 10,559 (6th Cir. 1969) simply does not appear from the reported opinion. Finally, the question of jurisdiction was neither raised nor discussed by the courts in Turley v. Hall's Motor Transit Co., 296 F.Supp. 1183 (M.D.Pa.1969) and Kress v. Local No. 776, International Brotherhood of Teamsters, Warehousemen and Helpers of America, 42 F.R.D. 643 (M.D.Pa. 1967).

count must be dismissed for lack of subject matter jurisdiction.

\* \* \* \* \* \*

Defendants' motions to dismiss and for summary judgment on the Title VII counts of the complaint and the defendant Oxford's motion to dismiss and for summary judgment on the Section 301 count of the complaint against it are denied. The defendant Union's motion to dismiss the Section 301 count of the complaint against it is granted, and that count is dismissed for lack of jurisdiction in this Court.

It is so ordered.